Mr. Samuel M. Peek City Attorney City of Valparaiso 92 Eastview Avenue Post Office Box 147 Valparaiso, Florida 32580
Dear Mr. Peek:
This is in response to your request for an opinion on the following questions:
 1. IF CHANGES ARE MADE IN A PROPOSED ORDINANCE UPON THE SECOND READING OF THE ORDINANCE, IS THE CITY REQUIRED TO HAVE ANOTHER READING OF THE ORDINANCE FOLLOWING THE READING IN WHICH CHANGES WERE MADE?
 2. MUST THE CITY RENOTICE THE ADOPTION OF THE ORDINANCE IN A NEWSPAPER OF GENERAL CIRCULATION IF CHANGES ARE MADE IN THE ORDINANCE AT THE SECOND READING?
 3. DOES THE SECOND READING OF THE ORDINANCE HAVE TO BE IDENTICAL TO THE FIRST READING OF THE ORDINANCE?
 4. IF CHANGES ARE MADE IN THE ORDINANCE AT THE FIRST READING OF THE PROPOSED ORDINANCE, IS THE CITY COMMISSION REQUIRED TO HAVE TWO SUBSEQUENT READINGS OF THE PROPOSED ORDINANCE?
Since your questions are interrelated, they will be answered jointly.
Your inquiry notes that, on numberous occasions, the City Commission of Valparaiso has found it necessary to make changes in proposed ordinances during the enactment process. You also note that the changes made at both the first and second readings of an ordinance are usually small modifications, but that on occasions substantial changes are made to a proposed ordinance.
It is appropriate to interject here that a determination whether any change to a proposed ordinance during the enactment process is substantial or not is a question of fact or mixed question of fact and law which our office is not empowered to determine. See, Statement of Policy Concerning Attorney General Opinions, Annual Report of the Attorney General, 1980, at p. viii. Compare, Farnsley v. Henderson, 240 S.W.2d 82 at 84 (Ct.Ap. Ky. 1951) (holding that what constitutes a material or substantial change in an ordinance between first consideration and enactment is dependent upon the circumstances of each case).
Subsection (1)(a) of s 166.041, F.S., defines `ordinance' for the purposes of that section as `an official legislative action of a governing body, which action is a regulation of a general and permanent nature and enforceable as a local law.' See also, AGO 075-171. Section 166.041 generally sets forth the procedures for adoption of ordinances, s 166.041(6) specifically providing that:
 The procedure as set forth herein shall constitute a uniform method for the adoption and enactment of municipal ordinances
and resolutions and shall be taken as cumulative to other methods now provided by law for adoption and enactment of municipal ordinances and resolutions. By future ordinance or charter amendment, a municipality may specify additional requirements for the adoption or enactment of ordinances or resolutions or prescribe procedures in greater detail than contained herein. However, a municipality shall not have the power or authority to lessen or reduce the requirements of this section or other requirements as provided by general law. (e.s.)
See, AGO's 081-32; 075-173; 074-371 (concluding that this statute provides a uniform method for the enactment of municipal ordinances unless a municipality has adopted more stringent requirements subsequent to the effective date of s 166.041).
Subsection (3)(a) of s 166.041 sets forth this uniform method:
 Except as provided in paragraph (c), a proposed ordinance may be read by title, or in full, on at least 2 separate days
and shall, at least 7 days prior to adoption, be noticed
once in a newspaper of general circulation in the municipality. The notice of proposed enactment shall state the date, time, and place of the meeting, the title or titles of proposed ordinances, and the place or places within the municipality where such proposed ordinances may be inspected by the public. Said notice shall also advise that interested parties may appear at the meeting and be heard with respect to the proposed ordinance. (e.s.)
In City of St. Petersburg v. Austin, 355 So.2d 486 (2 D.C.A. Fla., 1978), the court interpreted subsection (3)(a) as imposing a mandatory reading requirement in the enactment of municipal ordinances, with municipalities having a choice of reading the proposed ordinance by title or in full. Moreover, by the plain meaning of the language `shall . . . be noticed . . . in a newspaper . . .' it is apparent that the notice or publication provision is mandatory also. Thus, both the reading and notice provisions of this section should be regarded as mandatory. Seealso, 62 C.J.S. Municipal Corporations s 418(a).
However, my research has revealed no Florida appellate decisions which are germane to the specific issues raised by your inquiry, nor have I found any cases which interpret s 166.041(3)(a) in these particular areas. But, there are other authorities which treat the issues raised by your letter. 5 McQuillin, MunicipalCorporations s 16.87, states that while there may be a change in details through which the purpose of an ordinance is manifested, the original general purpose of a measure cannot be changed by amendment on passage. Thus, amendments can be made during passage of an ordinance when the amendment is not one changing the original purpose, but a material amendment, one going to thesubstance of the ordinance, cannot be made during the very meeting at which the ordinance is passed. See, B. and B. Vending Co., v. City of El Paso, 408 S.W.2d 545 (Ct. Civ. App. Tex. 1966) (holding that amendments to a city ordinance between first and second readings were not so substantial as to make the final draft a `new' ordinance); Jefferson v. City of Anchorage, 513 P.2d 1099
(Alaska 1973) (holding that since amendment of a proposed ordinance did not change its basic character, and since there was no material change in the subject treated, it was not necessary to proceed as though it were a new ordinance, repeating required procedural steps). The same criteria have been applied to the notice or publication requirement in the case of ordinances substantially amended following original notice. 5 McQuillin, supra, s 16.88, and authorities cited therein. Seealso, 62 C.J.S. Municipal Corporations s 417(b) (noting that any material or substantial difference between the ordinance originally introduced and that passed will render the ordinance void if the form in which it was finally passed was not before the governing body for the required time, but that an ordinance will not be invalidated simply because it is, when finally passed, not in the exact form in which originally introduced, provided that any changes are not substantial or material). Accord, Farnsley v. Henderson, supra.
I note in passing that notice is an elemental aspect of due process, courts having historically set forth the general principle that due process consists basically and in part of fair notice and an opportunity to be heard. In City of St. Petersburg v. Austin, supra, at 488, the Second District Court of Appeal found correct and affirmed the trial court's conclusion of law stating, inter alia, the legislative intent of s 166.041(3)(a): `[t]he legislative intent is to give the public notice of the ordinance and to make the council itself aware of the ordinance's effect . . . .'
In view of the above authorities, I must conclude that if any substantial or material changes or amendments are made during the adoption process, the enactment process mandated by s166.041(3)(a) must start anew, with full compliance with the reading and notice requirements contained therein. Thus, your first and second questions are answered in the affirmative, if the changes in the proposed ordinance were substantial or material; your third question is answered in the negative; your fourth question is answered in the affirmative, if the changes made were substantial or material.
In sum, unless and until legislatively or judicially determined otherwise, it is my opinion that if any substantial or material changes or amendments are made during the process of enacting a municipal ordinance, the enactment process mandated by s166.041(3)(a) must begin anew with full compliance with the reading and notice requirements contained therein.
Sincerely,
Jim Smith, Attorney General
Prepared by: Anne Curtis Terry, Assistant Attorney General