492 So.2d 852 (1986)
George ALBRIGHT, Jr., Agnes Albright, W.H. Smallridge and Juanita Smallridge, Appellants,
v.
Gene HENSLEY, et al., Appellees.
No. 85-286.
District Court of Appeal of Florida, Fifth District.
August 21, 1986.
*853 George J. Albright, III, Ocala, and C. Ray Green, Jr., of Greene, Greene, Falck & Coalson, Fort McCoy, for appellants.
John P. McKeever, of Patillo and McKeever, P.A., Ocala, for appellees.
SHARP, Judge.
The Albrights and the Smallridges, owners of four tracts of land located on Lake Weir in Marion County, appeal from the circuit court's final judgment which overturned a variance granted to them by the Marion County Board of Adjustment. Pursuant to the Zoning Code[1] each lot in a single family residential zoning district (in which this land is located) requires an 85 foot tract width (the horizontal distance between side tract lines at the depth of the front building lines). Because these tracts were wider at either end than in the middle, a variance was required in order to permit the owners to divide the tracts into eight building lots rather than seven or some lesser number. The variance reduced the required tract width to 78 feet. We sustain the trial court's decision.
Appellants' sole attack on the final judgment is that the appellees lack standing to challenge the variance because they did not allege or prove any special damages they would suffer which were different in kind than those which would be suffered by the community in general.[2] Regarding standing, the sole proofs in the record consist of the parties' joint stipulation which was introduced into evidence at trial by the appellants:
1. Each of the Plaintiffs are the owners, individually or in joint tenancy, of property with frontage on Lake Weir in Marion County, Florida, on which Plaintiffs maintain their principal residences.
2. The property of Defendants ALBRIGHT and SMALLRIDGE (the "Smallridge Property") subject of the action by the Marion County Board of Adjustment sought to be reviewed in this case is located on Lake Weir in Marion County, Florida.
3. None of the Plaintiffs own property adjacent to the Smallridge Property. Of the properties owned by Plaintiffs, respectively, the property of Plaintiff HENSLEY is closest to the Smallridge Property, lying South at a distance of 1,320 feet or more from the Smallridge Property and separated from the Smallridge Property by two intervening parcels, *854 one owned by Defendant Albright adjacent to the Smallridge Property. The properties of the remaining Plaintiffs lie at greater distances from the Smallridge Property.
4. Plaintiffs do not allege nor contend they will suffer any injury as a result of the action of the Marion County Board of Adjustment different in nature, kind or degree than that suffered by any other owner of property on Lake Weir.
5. Plaintiffs have not alleged nor do they contend that they have or will suffer an immediate or direct economic loss as a result of the action of the Marion County Board of Adjustment respecting the Smallridge Property.
The appellees sought to challenge the variance by filing a "Complaint for Judicial Review of Decision of Board of Adjustment," pursuant to section 163.250, Florida Statutes (1983). That statute allows any person who is "aggrieved" by a decision of the board of adjustment to apply to the circuit court for judicial relief. Two types of suits are contemplated:
Review in the circuit court shall be either by a trial de novo, which shall be governed by the Florida Rules of Civil Procedure, or by petition for writ of certiorari, which shall be governed by the Florida Appellate Rules. The election of remedies shall lie with the appellant.
In this case, the parties seeking to challenge the variance sought a trial de novo in the circuit court, although at trial, the only issues and proofs they offered were more appropriate for certiorari review. The sole thrust of their challenge was that the Board of Adjustment acted in violation of the Marion County Zoning Code section 15.2 and section 163.225(3), Florida Statutes (1983), which prescribe the minimum standards for granting variances, because at the hearing where the application was considered, appellants and the county officials failed to present any evidence to substantiate the findings required by the statute and ordinance.[3]
Appellees authenticated and introduced in evidence the minutes of the meeting of the Board of Adjustment where the variance *855 was considered, the applications for the zoning variance, and the formal findings and action of the Board in granting the variance. They offered little proofs beyond those documents. At that point, appellants moved for judgment in their favor. The court denied their motion. Thereafter, appellants presented testimony from each landowner in the group whose land benefited from the variance. They purchased the tracts for investment purposes, planning to sell off the smaller building lots. Due to the shape of the tracts, they could only get seven instead of eight lots out of them, because of the width of lot requirement. They were unaware of this problem before they purchased the land, although they knew of the zoning rules, and they knew the property was zoned R-1.
The final judgment in this case overturning the variance found that it had been granted without any evidence to support the necessary findings required by the zoning code and the statute. It also found that evidence at the trial rebutted that any of the required special circumstances existed regarding these lands which would have justified a variance. Our review of the record supports the trial judge's findings.
The necessary quality of a party's "standing" to challenge a zoning ordinance or variance depends upon the reason why the challenge is being made.[4] If the attack is a fundamental, procedural one that would make the zoning variance void, then a person has standing under section 163.250 by simply being a taxpayer or owner of property in the same governmental unit issuing the ordinance or variance.[5] If the attack is on the reasonableness of the zoning board's action, with the concomittant burden to show such action was arbitrary and not fairly debatable, then the challenging party must establish some special or additional damage to his property caused by the variance or ordinance.[6] The showing of special damages is still required in such cases, although the courts have reduced what was formally required to establish special damages.[7]
In this case, we do not need to determine whether or not appellees had this enlarged standing because of their being riparian landowners on Lake Weir, located from a mile to 1320 feet from the appellants' lands.[8] They were clearly landowners and taxpayers within Marion County, the jurisdiction which issued the variance. These facts were sufficient to allow the kind of attack they mounted on the zoning variance in this case. Making a finding on the basis of no evidence, when required to hold a hearing and consider various factors before taking such action, is fundamentally procedurally defective.[9] It is equally as defective as failing to give notice,[10] or an illegal enactment due to violation of the Sunshine Law.[11]
*856 The appellees probably should have elected certiorari review rather than a de novo trial. They proved their challenge based solely on the record of the proceedings before the board of adjustment, and they were not asking the circuit court to step into the shoes of the board and make the determination to grant or not grant the variance based on new evidence presented at the trial.[12] Under these circumstances, nothing would have been done differently by the trial court or other parties had the suit been denominated "petition for certiorari." Upon reviewing the record, we conclude that substance should triumph over form,[13] unless it operates to deprive a party of a substantial right or opportunity to present his case. Neither occurred here. We elect to treat this appeal as a petition for common law certiorari, and appellant's complaint below as a statutory writ of certiorari. Accordingly, we deny the petition because the lower court reached the correct result even though appellees pursued an incorrect remedy. City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982).
PETITION DENIED.
UPCHURCH, C.J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
County zoning authorities granted a variance to permit a reduction of the minimum width of eight residential lots from eighty-five feet to seventy-eight feet. Appellees, who own residential lots located over one-quarter mile away around Lake Weir attacked this small variance granted appellants by electing the remedy of a trial de novo under section 163.250, Florida Statutes (1983). The trial court vacated the variance.
Appellees' judicial inquiry into the merits of the variance was necessarily based on the assertion that the variance was, beyond fair debate, an unreasonable exercise of legislative power by the zoning authorities. The trial judge should be reversed because the reasonableness of this small variance in lot width in this case is, as a matter of law, "fairly debatable." Furthermore, in this case appellees lacked standing to sue because their trial de novo falls within category two of the legal analysis in Renard v. Dade County, 261 So.2d 832 (Fla. 1972), and they had no legally recognizable interest that is adversely affected by this seven foot variance as to minimum residential lot width so far removed from their property. The majority opinion holds as a matter of law that merely being landowners and taxpayers within Marion County (or because they are riparian owners on Lake Weir  with miles of shoreline and area of some 7000 acres) gives appellees the necessary standing to challenge this zoning variance without allegations or proof that appellees suffered any special damages different in kind from the community in general. That holding conflicts with Renard. The variance permits one more family to enjoy living on Lake Weir and cannot reasonably have any material, significant effect upon the health, safety, or welfare of appellees who own lots so far away. De Minimis non curat lex.
The fairly debatable rule has its basis in the deference that the judicial power owes the legislative function under the separation of powers doctrine inherent in our form of government and expressly embodied in our state and federal constitutions. Because in substance the grant or denial of a zoning variance is the exercise of executive, administrative, or quasi-judicial power, and definitely not the exercise of legislative power, the reason for the fairly debatable rule does not apply in zoning variance cases.[1] Decisions in such cases are peculiarly subject to political pressures and should be subject to full judicial review to prevent the arbitrary, unfair, and unreasonable *857 application of politically motivated governmental power to the constitutionally protected property rights of citizens. The power and duty of the judicial branch to protect the legal rights of one against the desires of many is not a popular concept with those who would curry favor with the electorate but it is necessary for the preservation of individual freedoms in a democracy. When the zoning authority rules in favor of the many and denies the individual landowner greater use of his property, and a trial judge gives the landowner judicial relief, appellate courts roll out the hoary "fairly debatable" rule and reverse the trial judge; but when the shoe is on the other foot and the zoning authority stands against the clamor of the crowd and in favor of the individual, and the trial court vacates the action of the zoning authority, the appellate court, as here, does not apply the fairly debatable rule. This is not equal application of the law. The majority holding conflicts with Renard v. Dade County, supra.
NOTES
[1] Marion County, Fla., Zoning Code (1982).
[2] Renard v. Dade County, 261 So.2d 832 (Fla. 1972).
[3] The zoning code requires that the petition for a variance must demonstrate:

A. Special conditions and circumstances exist which are peculiar to the land, structure or building involved and which are not applicable to other lands, structures or buildings in the same zoning district.
B. The special conditions and circumstances do not result from the actions of the applicant.
C. Literal interpretation of the provisions of regulations would deprive the applicant of rights commonly enjoyed by other properties in the same zoning district under the terms of these Regulations and would work unnecessary and undue hardship on the applicant.
D. The variance, if granted, is the minimum variance that will make possible the reasonable use of the land, building or structure.
E. Granting the variance requested will not confer on the applicant any special privilege that is denied by these Regulations to other lands, buildings or structures in the same zoning district.
F. The granting of the variance will be in harmony with the general intent and purpose of these Regulations, will not be injurious to the neighborhood or otherwise detrimental to the public welfare.
The statute requires that the Board authorizing a variance must find:
1. That special conditions and circumstances exist which are peculiar to the land, structure, or building involved and which are not applicable to other lands, structures, or buildings in the same zoning district;
2. That the special conditions and circumstances do not result from the actions of the applicant;
3. That granting the variances requested will not confer on the applicant any special privilege that is denied by this ordinance to other lands, buildings, or structures in the same zoning district;
4. That literal interpretation of the provisions of the ordinance would deprive the applicant of rights commonly enjoyed by other properties in the same zoning district under the terms of the ordinance and would work unnecessary and undue hardship on the applicant;
5. That the variance granted is the minimum variance that will make possible the reasonable use of the land, building or structure;
6. That the grant of the variance will be in harmony with the general intent and purpose of the ordinance and that such variance will not be injurious to the area involved or otherwise detrimental to the public welfare.
§ 163.225(3)(a).
[4] Skaggs-Albertson's v. ABC Liquors, Inc., 363 So.2d 1082 (Fla. 1978).
[5] Exchange Investments, Inc. v. Alachua County, 481 So.2d 1223 (Fla. 1st DCA 1985); City of Miami v. Save Brickell Ave., Inc., 426 So.2d 1100 (Fla. 3rd DCA 1983); Upper Keys Citizens Ass'n., Inc. v. Wedel, 341 So.2d 1062 (Fla. 3rd DCA 1977).
[6] Renard, 261 So.2d at 837; cf. Skaggs-Albertson (interpretation of zoning ordinance); Citizens Growth Management Coalition of West Palm Beach, Inc. v. City of West Palm Beach, Inc., 450 So.2d 204 (Fla. 1984) (rezoning challenged because contrary to local government comprehensive planning act).
[7] Renard, 261 So.2d at 837; Skaggs-Albertson, 363 So.2d at 1088.
[8] See Exchange Investments, Inc. v. Alachua County, 481 So.2d at 1225-1226 (dictum) (court said increased parking and traffic problem might give property owner standing to challenge rezoning, where its property was located one mile distant from the rezoned property).
[9] U.S. CONST.amend. V; see Town of Indialantic v. Nance, 485 So.2d 1318 (Fla. 5th DCA 1986).
[10] See Renard, 261 So.2d at 838; Save Brickell Ave., Inc. v. City of Miami, 395 So.2d 246 (Fla. 3rd DCA 1981).
[11] Upper Keys Citizens Ass'n., Inc. v. Wedel, 341 So.2d 1062 (Fla. 3rd DCA 1977).
[12] See City of Ormond Beach v. State Ex rel Del Marco, 426 So.2d 1029 (Fla. 5th DCA 1983).
[13] Fla.R.App.P. 9.040(c).
[1] See the special concurring opinion in City of New Smyrna Beach v. Barton, 414 So.2d 542 (Fla. 5th DCA 1982), rev. denied, 424 So.2d 760 (Fla. 1982).